
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2017

**ZACHARY CARLISLE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 11-03600     James M. Lammey, Judge

_____

**No. W2016-01357-CCA-R3-PC**

_____

Petitioner, Zachary Carlisle, was convicted of voluntary manslaughter and employing a firearm during the commission of a dangerous felony and received an effective sentence of thirty years, all of which was affirmed on direct appeal. *State v. Zachary Carlisle*, No. W2012-00291-CCA-R3-CD, 2013 WL 5561480, at *1 (Tenn. Crim. App. Oct. 7, 2013), *perm. app. denied* (Tenn. Mar. 17, 2014). Petitioner subsequently filed a petition for post-conviction relief, alleging ineffective assistance of counsel and prosecutorial vindictiveness. The post-conviction court denied relief after a hearing. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Monica Timmerman, Memphis, Tennessee, for the appellant, Zachary Carlisle.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Gavin Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

Over eight years ago, Petitioner killed Neal Krauss. He was indicted for voluntary manslaughter and employing a firearm during the commission of a dangerous felony as a result of his role in a drug deal gone wrong. *Id.* at *2-3. The facts underlying

Petitioner's conviction indicate that the victim arranged to purchase drugs from Petitioner but did not have enough money for the transaction. *Id.* at *2. On the way to meet Petitioner, the victim tore a green paper flyer into strips and wrapped a dollar bill around it to create a fake wad of money. *Id.* When Petitioner realized that he was being duped, he pulled a gun on the victim. *Id.* at *3. A brawl ensued between Petitioner and the victim during which the victim was shot. *Id.* The victim died shortly thereafter. After a jury trial, Petitioner was convicted of both offenses. *Id.* at *1. The trial court sentenced Petitioner to consecutive fifteen-year sentences for the convictions. *Id.*

Trial counsel failed to file a timely motion for new trial. *Id.* at *19. On appeal, Petitioner challenged the sufficiency of the evidence, the failure of the indictment to charge an offense, the lack of a jury instruction on self-defense, and the trial court's instruction that Petitioner's statements could qualify as a confession. *Id.* at *1. This Court affirmed the judgment of the trial court, finding the evidence and indictment sufficient and that plain error did not entitle Petitioner to relief for the remaining issues. *Id.* The supreme court denied permission to appeal.

Subsequently, Petitioner filed a lengthy pro se petition for post-conviction relief. In the petition, he raised various issues, including: (1) the failure of the State to provide adequate notice of enhanced punishment; (2) the violation of his Sixth Amendment right to a trial by jury due to the trial court's use of enhancement factors; (3) the violation of double jeopardy rights by dual convictions for voluntary manslaughter and employing a firearm during the commission of a dangerous felony; (4) the failure of the State to provide evidence favorable to his defense; (5) the State's use of perjured testimony; (6) ineffective assistance of counsel; and (7) prosecutorial vindictiveness with regard to the indictment of employment of a firearm. With regard to trial counsel, Petitioner claimed that he was ineffective because he failed to communicate plea offers, failed to discuss plea offers and potential sentences with Petitioner, failed to confer with Petitioner with regard to his defense, failed to properly investigate witnesses, failed to object to jury instructions, and failed to file a motion for new trial. Petitioner attached several items to his petition for relief, including an affidavit from trial counsel in which trial counsel admitted that he did not timely file the motion for new trial due to "an unexpected traumatic event" that occurred at his office on the date the motion was set to be filed. Petitioner also attached a copy of a complaint made to the Tennessee Board of Professional Responsibility against trial counsel by his mother.

The post-conviction court appointed counsel and an amended petition was filed. The amended petition incorporated the allegations from the pro se petition and pointed to additional deficiencies by trial counsel. The amended petition also alleged that the State's decision to seek an indictment for employing a firearm during the commission of a dangerous felony after Petitioner decided to go to trial amounted to a rebuttable presumption of prosecutorial vindictiveness.

At the hearing on the post-conviction petition, the post-conviction court heard testimony from an Assistant District Attorney General in Shelby County. He was not originally assigned to Petitioner's case but took over the case prior to trial. He recalled that the State had "extended an offer of six years" to Petitioner before he was involved in the case. The "offer was just out there . . . kind of going back and forth between counsel [for Petitioner and the State]." He originally honored the offer but eventually decided that the case had been "under-indicted" based on the facts. Counsel for the State felt that the case should have been indicted as second degree murder. After examining the facts and becoming more familiar with the case, the State decided to explore the option of an additional indictment and, as a result, amended the offer "from six years to 15 years at 60 percent." The State sought an additional indictment on the firearm charge but denied seeking the indictment as a result of Petitioner's rejection of the plea deal. Counsel for the State evaluated the facts, felt the State had a strong case, and determined that the matter would eventually go to trial.

Counsel for the State recalled that witness Brian Nelson[1] contacted the State with information about the incident. The State did not doubt Mr. Nelson's version of the events, finding him to be "truthful" despite the "considerable risks [he faced] to come forward and testify" due to his perception as a "jailhouse snitch."

Initially, the Public Defender's Office represented Petitioner. Substitute counsel was appointed to represent Petitioner in May of 2010 after the Public Defender's Office was removed due to a conflict of interest. She recalled communicating the existing six-year offer to Petitioner and he "decided to go to trial." Substitute counsel recalled that the matter had been unsuccessfully resubmitted for an indictment on second degree murder. Substitute counsel recalled Petitioner rejected the offer in August of 2010. In January of 2011, substitute counsel was replaced by trial counsel. The matter was set to go to trial in February of 2011.

Petitioner's mother hired trial counsel in January of 2011. Trial counsel had been licensed to practice law since 1999 and had tried over 100 cases, though he closed his law practice in 2014 prior to the post-conviction hearing. Petitioner's case was continued for about six months when trial counsel was hired in order to give him time to prepare for trial. Trial counsel recalled that Petitioner "didn't want to hear anything about an offer" because he maintained his innocence and "wanted his trial." Despite Petitioner's wishes, trial counsel "tried to get [the] six[-year] offer back" and "frankly was going to try to cram it down [Petitioner's throat]." Trial counsel remembered that there was talk of re-

---

[1] Mr. Nelson was incarcerated at the time of trial. He testified at trial that he was sitting in a car diagonally across the street on the night the victim was shot during the drug deal, saw Petitioner with a gun, and did not see the victim with a gun. *Zachary Carlisle*, 2013 WL 5561480, at *4-5.

indictment and that he continued to negotiate with the district attorney. At that point, the State was offering a fifteen-year sentence. Trial counsel explained that Petitioner rejected that deal. In his words, "[t]he man was not pleading." The trial court set the matter for trial and told the parties there would be no further negotiation. The trial court put Petitioner on the stand to question him about the existing offers and his desire to proceed to trial.

When trial counsel realized that the matter would go to trial, he began to prepare by meeting with witnesses, getting an investigator appointed, and developing a trial strategy. Because Petitioner maintained his innocence, trial counsel "spent an inordinate amount of time with [counsel for the State] getting whatever [he] could get from him."

Trial counsel discussed trial strategy with a mentor and recognized the two defenses to voluntary manslaughter were "you've got the wrong guy" and "self-defense." Based on the facts, trial counsel knew that he could not argue that Petitioner was not at the scene. However, Petitioner maintained that "it didn't happen, he didn't do it." Trial counsel did not think that he had a defense other than to "argue reasonable doubt." When it came time for trial, however, Petitioner "essentially admit[ted] to the facts that led to these charges." Trial counsel recalled that Petitioner told him he was there, that there was a fight, that a "drug deal [had] gone bad," and that he fired a weapon.

Trial counsel recalled the testimony of the two jailhouse snitches, Brian Nelson and Dennis Sullivan. Trial counsel did not specifically recall their testimony but recalled asking for a mistrial after one of the witnesses claimed Petitioner threatened to kill someone.

After trial but before sentencing, Petitioner's mother filed a bar complaint against trial counsel. Trial counsel filed a motion to withdraw, but it was denied by the trial court. At the sentencing hearing, trial counsel recalled that Petitioner testified to "the truth."

Trial counsel wholeheartedly admitted that he failed to timely file the motion for new trial. Trial counsel recalled being in court a few days prior to the filing deadline and assuring the trial court that the motion would be filed. Trial counsel testified that "on the day that the intention was to file it . . . there was an unrelated incident that had to do with . . . [his] family." Trial counsel explained:

> I had a cousin who was charged with a very serious crime in East Tennessee. It was a very serious matter where he had attempted to kill himself as a result of it. He was charged - - he's a teacher. He was charged with an inappropriate relationship with a student and I came up there, talked to the family. And during that time I spoke to his wife and his

- 4 -

brother and I advised him that I would expect law enforcement to come to their house and search for evidence. This was well prior to the trial. This was months in advance.

. . . .

[On the day I was going to file the motion for new trial,] [t]he Alcoa Police Department in Alcoa, Tennessee, the Maryville Police Department, the TBI, some federal people are both - - there was 15 agents in my office and 15 agents at my home with search warrants to search for this evidence that I had - - that the wife had told them that may I ha[ve] it. And of course I didn't and I complied with the search process but we basically shut down. . . . for a couple days and so it did not get filed and that's why.

Despite the untimely filing of the motion, trial counsel did not think that "there was any issue that prejudiced the outcome, would have affected the outcome, would have changed the outcome in any shape or form from his trial, my preparation of his trial, the sentencing, or his appeal." On cross-examination, trial counsel opined that it was not vindictive for the State to re-indict Petitioner on the firearm charge. Trial counsel "felt like [he] did everything necessary to defend him the best he can get."

Petitioner testified at the hearing. He stated that he met with trial counsel for the first time shortly after his mother hired him. Petitioner admitted that he heard about the six-year offer from the public defender. However, when substitute counsel met with him, she explained that the six-year offer was "off the table" and that he was being re-indicted for second degree murder. Petitioner testified that trial counsel never told him about the six-year offer. Petitioner initially denied that the trial court discussed the six-year offer with him on the stand when the matter was set for trial but later admitted that the voir dire occurred. Petitioner testified that trial counsel's assistant, not trial counsel, conveyed the fifteen-year offer to him.

Petitioner admitted that he met Brian Nelson while he was incarcerated. He shared "crucial elements" of his case with Mr. Nelson because Mr. Nelson claimed that he was a "paralegal from the streets" and would help him write motions. The next thing he knew, Mr. Nelson was testifying at trial that Petitioner sold him drugs. Petitioner denied that Mr. Nelson was present on the night of the offense. He admitted that trial counsel questioned Mr. Nelson but that Mr. Nelson denied knowing Petitioner from jail.

Petitioner admitted that he ignored trial counsel's advice about testifying at trial. Petitioner claimed that he had "lost trust" with trial counsel at that point because of the testimony of Mr. Nelson and the fact that trial counsel "didn't interview him or investigate him until the guy was taking the stand."

Petitioner wanted trial counsel to file a motion for new trial. In fact, Petitioner drafted a motion of "all the errors" at trial and had his mother send it to trial counsel. Petitioner testified that trial counsel intended to call a few witnesses at the motion for new trial hearing, including potentially two men from jail that would testify that Mr. Nelson was housed with Petitioner. Petitioner explained that trial counsel's failure to file the motion resulted in issues getting waived on appeal. Petitioner admitted to the post-conviction court that he "[a]ccidentally" killed the victim.

Petitioner wanted to call a witness to testify at the post-conviction hearing that would testify he was housed with Mr. Nelson at jail and saw Mr. Nelson going through Petitioner's court documents in jail. Trial counsel did not know about this witness during trial but may have called him at the motion for new trial hearing. The post-conviction court determined that this witness would not be called but that the court would "take it as gospel truth [the witness] would have said that he saw [Mr. Nelson] going through [Petitioner's] stuff."

At the conclusion of the hearing on the post-conviction petition, the post-conviction court made findings of fact and conclusions of law from the bench. The post-conviction court determined that there was no prosecutorial vindictiveness. In fact, the court commented that "it would have been a dereliction of duty for [the State] not to submit this to the grand jury because [Petitioner] is the type of person that you want to keep in jail for as long as you possibly can." The post-conviction court stated that the case was "still under-indicted" and believed Petitioner "was guilty of murder second degree." The court called Petitioner a "liar" and did not "believe a single word" that he had to say. The post-conviction court did not "see anything in the proof [at the hearing] that there [were] any real mistakes on behalf of [trial counsel], except for not filing the motion for new trial." The post-conviction court determined that was a mistake on behalf of trial counsel but that the mistake was not prejudicial. The post-conviction court characterized Petitioner's complaints as "bellyaching" that his thirty-year sentence was "all [trial counsel's] fault" and commented that had Petitioner listened to trial counsel and taken the six-year offer he would be "out of jail" and probably "kicking it with his buddies, probably smoking a little weed, and sitting back relaxing by the fire and whatever."

In the post-conviction court's opinion, Petitioner "wasn't prejudiced in any way" at trial. In a separate order, the post-conviction court found that Petitioner was "less than candid" and that his testimony was "incredulous." The post-conviction court found trial counsel's testimony credible. The failure to file a motion for new trial was "obviously deficient" but did not prejudice Petitioner. The post-conviction court concluded, "[c]ompetent counsel was appointed to handle the appeal to cover alleged plain error. Other issues waived by failure to file the notice were also discussed and were found to be

without merit with no cases cited reversing the trial courts for any of these alleged errors." Petitioner filed a timely notice of appeal.

*Analysis*

*A. Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). On appeal, this Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

*B. Ineffective Assistance of Counsel*

On appeal, Petitioner contends that the post-conviction court improperly determined that trial counsel rendered effective representation at trial. Specifically, Petitioner points to trial counsel's failure to file a motion for new trial and acknowledgement of that failure which, according to Petitioner, led to the foreclosure of several issues on appeal. Petitioner insists that he should receive a delayed appeal. The State disagrees.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408

(Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

We do not dispute that Petitioner received ineffective assistance of counsel on the basis of trial counsel's failure to file a timely motion for new trial. However, Petitioner must also show prejudice as a result of trial counsel's ineffectiveness. In our view, Petitioner has failed to do so. Petitioner complains that several issues were "foreclosed" from appellate review but has not identified those issues, whether he would have been successful on appeal, or how he was prejudiced by the failure to seek relief on those issues. Appellate counsel raised as plain error the lack of a self-defense instruction and the trial court's instructing the jury that Petitioner's statements could qualify as confessions. *See Zachary Carlisle*, 2013 WL 5561480, at *18-20. Moreover, the evidence at the post-conviction hearing does not preponderate against the post-conviction

court's conclusion that Petitioner failed to show prejudice as a result of trial counsel's failure to file the motion for new trial.

### C. Prosecutorial Vindictiveness

Petitioner also alleges that the "State's decision to seek an indictment for Employing a Firearm During the Commission of a Dangerous Felony gives rise to a rebuttable presumption of prosecutorial vindictiveness." Specifically, Petitioner argues that because he was originally indicted for voluntary manslaughter and the State only sought the additional indictment for employing a firearm after Petitioner failed to accept the plea offer, the State action amounted to prosecutorial vindictiveness. The State argues that this issue is waived.

We agree. Petitioner failed to raise this issue on direct appeal and does not allege now that either trial counsel or appellate counsel was ineffective in failing to raise it on appeal. Tennessee Code Annotated section 40-30-106 provides that a "ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented" unless two exceptions apply, neither of which are applicable to Petitioner.

Moreover, Petitioner's claim is meritless. To date, the Tennessee Supreme Court has not addressed the issue of prosecutorial vindictiveness in the pre-trial context, as is the case here. However, the United States Supreme Court first addressed an allegation of prosecutorial vindictiveness in a pre-trial setting in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), holding that the presumption of vindictiveness does not arise when a prosecutor follows through on a threat, made during plea negotiations, to bring additional charges against a defendant who declines to plead guilty to the offense with which he was originally charged. *Id.* at 363. The Supreme Court explained that, in our judicial system,

> so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'

*Id.* at 364 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). In this case, the additional indictment came pre-trial after Petitioner rejected a plea agreement. There is no

presumption of prosecutorial vindictiveness and Petitioner has failed to provide clear and convincing evidence of actual vindictiveness on behalf of the State.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


_____
TIMOTHY L. EASTER, JUDGE